UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DONSHEA JANAE WILSON, *a/k/a* Ricco,<br><br>Defendant. | ) | Criminal Action No. 5:26-CR-54-CHB-MAS<br><br>**MEMORANDUM OPINION AND ORDER** |

*** *** *** ***

This matter is before the Court on a Report and Recommendation ("R&R") of United States Magistrate Judge Matthew A. Stinnett, [R. 24], recommending that the Court deny Defendant Donshea Janae Wilson's Motion to Suppress, [R. 14]. Wilson timely filed objections to the R&R, [R. 27], and the United States did not file any objections or respond to Wilson's objections. For the reasons outlined below, the Court will modify the R&R in part, otherwise overrule each of Wilson's objections, and deny Wilson's Motion to Suppress.

## I. BACKGROUND

On May 7, 2026, Wilson was indicted on a single count of violating 18 U.S.C. § 922(g)(1), which prohibits the possession of certain firearms by any person "who has been convicted . . . of[] a crime punishable by imprisonment for a term exceeding one year." *Id.*; *see* [R. 1 (Indictment)].

On July 29, 2026, Wilson moved to suppress "[t]he firearm recovered by law enforcement officers, together with any evidence or statements obtained as a direct or indirect result of that unlawful seizure." [R. 14-2, p. 1]; *accord* [R. 14, p. 11]. Attached to Wilson's Motion were four exhibits: a recording of a 911 call; a police report; and two recordings captured by police officers' body-worn cameras ("BWCs"). [R. 14-1]; [R. 17]. The United States responded in opposition to

Wilson's Motion, [R. 20], and Wilson replied, [R. 21]. The Court referred the Motion to Judge Stinnett for a hearing, if necessary, and a report and recommendation. [R. 18].

Judge Stinnett held a hearing on the Motion on September 9, 2026. [R. 22]. At the hearing, Judge Stinnett heard testimony from Lexington Police Officer Banford Keith Hill, [R. 26, pp. 3–37], as well as arguments from counsel, *id.* at 38–43. Judge Stinnett also noted that he had reviewed all of the filings and previously viewed the BWC recordings. *Id.* at 2. The Court has independently reviewed the transcript of the hearing and the exhibits attached to Wilson's Motion to Suppress, and it draws the following facts from that record.

In the early hours of February 22, 2026, the owner of Blessed Brothers Bar and Grill ("the bar") called 911 to make a report of trespassing. [R. 17, Ex. A (911 Call)]. The owner reported that the trespasser, who was wearing a red hat, had assaulted the owner the previous weekend and had been banned from the bar. *Id.* at 0:10–0:33.

Officers Hill and Timothy Midkiff were dispatched to the bar around 2:45 AM. [R. 26, p. 4]; [R. 17, Ex. D (Hill BWC) at 0:01].[1] The officers learned that the trespasser went by the nickname "Ricco." [R. 17, Ex. D at 0:52–1:04]. When the officers arrived, they saw a group of about eight people, including Wilson, standing right outside the bar. [R. 26, p. 5: 6–7; R. 17, Ex. D at 1:25]. Wilson, who was wearing a red hat, was yelling and screaming. [R. 26, pp. 4:22–6:7, 11–12]; [R. 17, Ex. C at 1:16–1:30]; [R. 17, Ex. D at 1:18–1:35].

The front door to the bar was locked, but the door and the front wall of the bar were made of transparent glass, so it was possible to see in and out of the bar. [R. 26, p. 5:5–13]; [R. 17, Ex. C (Midkiff BWC) at 1:16–1:37]. A security guard opened the door and let the officers inside. [R. 26, p. 5:5–13]; [R. 17, Ex. C (Midkiff BWC) at 1:25–1:33]. The officers then spoke to the bar's owner,

[1] The Court's citations to the BWC recordings each reference the timestamp of the video file rather than the time of the day shown in the top-right corner of the recording.

who told them that "the guy out there in the red hat" was "not supposed to be here" and that he had "trespassed" at the bar on at least one prior occasion. [R. 17, Ex. C at 1:48–2:00]. As the officers and the owner walked toward the front door, the owner stated that he had already told Wilson to leave and that Wilson knew he was not supposed to be on the bar's premises. [R. 17, Ex. D at 2:02–2:20]. The video evidence plainly shows that by the time the officers reached the front door, Wilson had started to walk away from the bar.[2] [R. 17, Ex. C at 2:12–2:18].

As Wilson walked through the bar's parking lot toward an adjoining sidewalk, Hill yelled, "You gotta go," and Wilson responded, "I'm outta here," while raising and waving his hand toward the far end of the parking lot. [R. 17, Ex. D at 2:21–2:23]. A moment later, however, Hill directed Midkiff to get Wilson's information. *Id.* at 2:23–2:25. Hill then yelled, "Hey Ricco, hold on one second. Stop moving," and Midkiff yelled something similar. *Id.* at 2:27–2:30. Wilson continued to walk away, and the officers pursued him; a few seconds later, Wilson started running down the sidewalk. [R. 17, Ex. C at 2:25–2:40]. As Midkiff chased after Wilson, Midkiff saw Wilson throw something into a row of bushes next to the sidewalk. *See id.* at 2:40–2:45, 3:04–3:12. Shortly thereafter, Midkiff caught and handcuffed Wilson, *id.* at 2:50–3:30; [R. 17, Ex. D at 3:00–3:30], and Hill later found a gun in the bushes, [R. 17, Ex. D at 4:40–5:20]. The initial interaction—from when Wilson was told, "You gotta go," to when he was caught and handcuffed—spanned less than one minute. [R. 17, Ex. C at 2:19–3:10].

Judge Stinnett entered the R&R on September 14, 2026, recommending that the Court deny Wilson's Motion to Suppress. [R. 24]. In the R&R, Judge Stinnett reasoned that the officers' "initial stop of Wilson was supported by reasonable suspicion of trespass," *id.* at 4–6, and that the

[2] The Court agrees with Wilson that the bar owner did not actually direct Wilson off the property at this specific time and that Wilson began to walk away before being ordered by the officers to do so. [R. 27, p. 3]; *see* [R. 17, Ex. C at 2:02–2:20]; [R. 17, Ex. D at 2:02–2:20]. To the extent the R&R suggests otherwise, *see* [R. 24, p. 2], the findings set forth in this memorandum opinion and order reflect the findings of the Court.

officers "lawfully extended the stop when observing Wilson's flee[ing] and the presence of a firearm," *id.* at 6–8. Wilson timely filed six objections to the R&R, [R. 27], and those objections are now ripe for the Court's review.

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1)(B), a district court judge may designate a magistrate judge to issue proposed findings of fact and recommendations on a motion to suppress. Within fourteen days of being served a copy of a report and recommendation, a party may file written objections to the magistrate judge's proposed findings and recommendations. *Id.* The Court must then make a de novo determination of any proposed finding or recommendation to which specific objection is made. *Id.* § 636(b)(1)(C); *see, e.g.*, *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). To be sufficiently specific, objections must "explain[] and cite[] specific portions of the report which counsel deems problematic." *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) (alterations omitted) (quoting *Smith v. Chater*, No. 96-3325, 1997 WL 415309, at *2 (6th Cir. July 18, 1997)). Courts need not address general objections that fail to identify specific factual or legal issues, *see, e.g.*, *Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991), or objections that would not affect the outcome of the motion, *see, e.g.*, *United States v. Brazzell*, No. 23-CR-20237, 2024 WL 3251623, at *6 (W.D. Tenn. July 1, 2024), *aff'd*, No. 25-5578, 2026 WL 2364653 (6th Cir. Aug. 14, 2026). Ultimately, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(c).

## III. DISCUSSION

Wilson raises six objections to the R&R. [R. 27]. Specifically, he argues that Judge Stinnett erred by (1) not finding that a seizure occurred when Wilson continued to walk through the parking lot after Hill yelled out, "You gotta go," and finding that a seizure occurred when the officers directed Wilson to stop for identification, *id.* at 3–6; (2) finding that the officers were justified in

prolonging that initial "seizure" and seeking Wilson's identification after Wilson had left the bar's premises and started to walk away, *id.* at 3–4, 6–8; (3) relying on Wilson's flight and discarding of the gun to "retroactively justify" the officers' stopping and seizing Wilson for identification, *id.* at 8–9; (4) not analyzing whether the officers were justified in seizing Wilson to investigate a completed nonfelony offense, *id.* at 9–11; (5) recounting Hill's testimony that the area in which Wilson was standing when the officers arrived was part of the bar's "premises" under state and local law, *id.* at 11–13; and (6) referencing Wilson's conduct outside the bar without citing or applying a specific disorderly conduct statute, *id.* at 14.

For the reasons explained below, the Court will find that Wilson's first objection is meritorious in part, though not in any way helpful to Wilson, and the Court will modify the R&R to find that a seizure occurred only when Midkiff caught and handcuffed Wilson. Because each of Wilson's other objections depends upon a faulty premise—that a seizure occurred prior to his discarding of the gun—and because those objections are unpersuasive even on their own terms, the Court will overrule those objections in full. The Court will therefore deny Wilson's Motion to Suppress.

**A. Part of Wilson's first objection is persuasive, but not in any way that justifies granting Wilson's Motion to Suppress.**

In his first objection, Wilson asserts that Judge Stinnett erred by (a) not finding that a seizure occurred earlier when Hill yelled, "You gotta go," and Wilson continued to walk through the parking lot; and (b) finding that a seizure instead occurred a few moments later, when the officers directed Wilson to stop moving, and Wilson responded by continuing to walk, and then starting to run, through the parking lot and onto the sidewalk. [R. 27, pp. 4–6]. To address this objection, the Court must determine if Wilson was seized for Fourth Amendment purposes either when he was told leave the bar's premises—"You gotta go"—or when, moments later, the officers

told him to stop. For the reasons explained below, the Court finds that neither of those constituted a seizure. Accordingly, the Court agrees with the second, but not the first, of Wilson's assertions.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, . . . against unreasonable searches and seizures." U.S. Const. amend. IV. That protection "extends to all seizures, including the brief investigatory stops described by the Supreme Court in *Terry v. Ohio*, 392 U.S. 1 (1968)." *United States v. Johnson*, 620 F.3d 685, 690 (6th Cir. 2010).

A person is "seized" for Fourth Amendment purposes when "an officer 'by means of physical force or show of authority, has in some way restrained his liberty." *Id.* (alteration omitted) (quoting *Terry*, 392 U.S. at 19 n.16). Courts generally determine whether an officer has shown sufficient authority to effectuate a seizure by determining whether, "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Id.* (quoting *Michigan v. Chesternut*, 486 U.S. 567, 573 (1988)). However, the Sixth Circuit has indicated that a different analysis applies when an officer directs the person to *leave* a place, rather than to stay: "at least in circumstances where the person being asked to leave is not privileged to remain in the space[,] either because the space is no longer open to the public . . . or because the person's behavior violated a rule, ordinance, or law," a seizure occurs only when "officers use force beyond 'guiding force,' force that is 'painful' and not necessitated by 'resistance' on the part of the person being rejected." *Youkhanna v. City of Sterling Heights*, 934 F.3d 508, 523 (6th Cir. 2019) (quoting *Salmon v. Blesser*, 802 F.3d 249, 254 (2d Cir. 2015)).

Moreover, not every show of police authority amounts to a seizure; instead, the person "must actually yield to [the officer's] show of authority to be seized within the meaning of the Fourth Amendment." *Johnson*, 620 F.3d at 690 (citing *Brendlin v. California*, 551 U.S. 249, 254 (2007)); *California v. Hodari D.*, 499 U.S. 621, 626 (1991)); *see also Brendlin*, 551 U.S. at 254

("[T]here is no seizure without actual submission; otherwise, there is at most an attempted seizure, so far as the Fourth Amendment is concerned."). A seizure does not occur, for example, when an officer commands a person to stop and the person responds by running away. *See, e.g.*, *Hodari D.*, 499 U.S. at 622–23, 625–26 (holding that, even if an officer's pursuit amounted to a sufficient "show of authority," the defendant was not seized when he ran away). To determine whether a person yielded to police authority, courts must look to the circumstances surrounding the encounter: "What may amount to submission depends on what a person was doing before the show of authority." *United States v. Beauchamp*, 659 F.3d 560, 567–68 (6th Cir. 2011) (alterations omitted) (quoting *Brendlin*, 551 U.S. at 262).

Wilson first argues that Judge Stinnett erred by not finding that a seizure occurred when Hill yelled, "You gotta go." However, because Wilson did not in any way submit to Hill's authority, the Court will conclude that no seizure occurred, and that Judge Stinnett did not err. Wilson acknowledges that he had "already started to walk away" when the officers reached the front door of the bar, [R. 27, p. 3 (quoting [R. 26, p. 6:6])], and that after Hill issued his "command," Wilson simply "continued" to walk away, *id.* at 4. The video evidence clearly supports this timeline. [R. 17, Ex. C at 2:10–2:23]; [R. 17, Ex. D at 2:12–2:24]. And despite Wilson's assertion that his response to Hill—raising and waving his hand toward the edge of the parking lot and stating, "I'm outta here"—demonstrated his compliance, [R. 27, pp. 4–5], Wilson's conduct really amounted to no more than an acknowledgement that he had heard Hill and an indication that he was going to continue doing what he wanted to do: walking away, *see* [R. 17, Ex. D at 2:21–2:23]. Accordingly, Wilson did not submit to Hill's authority, and Judge Stinnett

properly declined to find that Wilson was seized based on Hill's yelling, "You gotta go."[3] *See, e.g.*, *Beauchamp*, 659 F.3d at 567–68; *Brendlin*, 551 U.S. at 254.

Wilson also argues that Judge Stinnett erred to the extent he found that a seizure occurred moments later, when the officers told Wilson to stop and Wilson responded by walking, and then running, away. Here, the Court agrees with Wilson. As explained above, a seizure does not occur when the person being subjected to police authority does not submit to that authority. *See, e.g.*, *Hodari D.*, 499 U.S. at 625–26; *United States v. Smith*, 594 F.3d 530, 539 (6th Cir. 2010) ("[A defendant's] failure to submit to the officers' show of authority meant that there was no seizure." (citing *United States v. Jones*, 562 F.3d 768, 774 (6th Cir. 2009))). In this case, the officers' commands to "hold on" and "stop moving" constituted a show of authority, but Wilson did not submit to that authority; instead, he continued to walk, and then began to run, away. [R. 17, Ex. C at 2:25–2:40]. Accordingly, Wilson was not seized when the officers directed him to stop, and a seizure did not occur until Midkiff caught Wilson and Wilson submitted to being handcuffed. *Id.* at 2:50–3:30; *see, e.g.*, *United States v. Jeter*, 721 F.3d 746, 752–53 (6th Cir. 2013) (holding that a seizure did not occur when a person fled from the police and that a seizure occurred only when the officers caught and arrested him); *United States v. Stoudemire*, No. 92-5288, 1992 WL 318614, at *2 (6th Cir. 1992) (same); *United States v. Williams*, 949 F.2d 220, 222 (6th Cir. 1991) (same).

For those reasons, the Court finds that officers did not seize Wilson either when they directed him to continue leaving the bar's premises or when they unsuccessfully ordered him to stop moving. Moreover, the Court concludes that the officers' subsequent arrest of Wilson and

---

[3] Moreover, the Court finds that even if Wilson's conduct did amount to submission, Hill's directive to "go" did not amount to a seizure under the Sixth Circuit's decision in *Youkhanna*, 934 F.3d at 523–24. Because Wilson was, by virtue of his prior conduct, prohibited from being at the bar, [R. 17, Ex. A at 0:10–0:20]; [R. 17, Ex. C at 1:48–2:00], and because Hill used no force in directing Wilson away from the bar, [R. 17, Ex. D at 2:21–2:23], no seizure occurred, *see Youkhanna*, 934 F.3d at 523–24.

eventual recovery of his gun—after the officers had reasonable suspicion of Wilson's trespassing, after Wilson had fled from the officers, and after the officers had observed him throw something into the bushes—were plainly lawful. *See, e.g.*, *United States v. Williams*, 475 F. App'x 36, 39 (6th Cir. 2012) ("We have held that if officers have reasonable suspicion that an individual has committed or is committing a crime, and when approached by officers the individual flees or attempts to flee, the reasonable suspicion 'ripens' into probable cause." (collecting cases)); *United States v. Phillips*, 677 F. App'x 294, 295 (6th Cir. 2017) ("[W]hen a fleeing suspect sheds evidence before being apprehended, as defendant did in this case, it is not the product of a 'seizure' and thus no violation of the Fourth Amendment to collect and use that evidence against him." (quoting *Hodari D.*, 499 U.S. at 629)); *United States v. Martin*, 399 F.3d 750, 752 (6th Cir. 2005) ("[B]ecause a seizure does not occur when a mere show of authority occurs, but only when one yields to a show of authority, the fourth amendment does not apply to anything one may abandon while fleeing the police in an attempt to avoid a seizure. This rule applies . . . even when the show of authority is an unlawful one." (citation omitted)). Accordingly, despite the Court's being persuaded by part of Wilson's first objection, that determination does not alter Judge Stinnett's ultimate recommendation or otherwise provide any basis to grant Wilson's Motion to Suppress.

**B. Wilson's other objections are wholly unpersuasive.**

Although the Court agrees with part of Wilson's first objection, each of Wilson's other objections rely on a faulty premise: that a seizure occurred prior to Wilson's discarding his gun. *See* [R. 27, pp. 3–4, 6–14]. Because the Court has found that a seizure occurred only when Midkiff caught and handcuffed Wilson, the remainder of Wilson's objections necessarily fail. Accordingly, the Court need not address those objections at all. *See, e.g.*, *Brazzell*, 2024 WL 3251623, at *6. Nevertheless, to ensure a complete record, the Court briefly notes that even if it were to accept the

key premise of Wilson's first objection and find that a seizure occurred when Hill yelled, "You gotta go," it would still conclude that Wilson's other objections are without merit.

Wilson's second through sixth objections are each aimed at demonstrating that, before Wilson fled, the officers lacked the reasonable suspicion necessary to "seize" Wilson by directing him away from the bar and that the officers' "extension" of that "seizure"—i.e., their directing Wilson to stop and chasing after him when he did not comply—was unreasonable. *See id.* The Court finds that none of Wilson's objections are persuasive.

"To justify a warrantless investigative stop, [an] officer must have a reasonable articulable suspicion that the suspect is committing or has committed a criminal offense." *United States v. Lombard*, No. 17-1372, 2018 WL 11337429, at *2 (6th Cir. Mar. 19, 2018) (citing *United States v. Galaviz*, 645 F.3d 347, 352–53 (6th Cir. 2011)). Reasonable suspicion is not a "high bar," *United States v. Sheckles*, 996 F.3d 330, 343 (6th Cir. 2021) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018)), and it requires only that the officers have a "a particularized and objective basis for suspecting the particular person stopped of criminal activity," *id.* (quoting *Kansas v. Glover*, 589 U.S. 376, 380 (2020)). Although officers are permitted to effectuate a stop based on reasonable suspicion of an ongoing trespass, *see, e.g.*, *United States v. Young*, 707 F.3d 598, 605 (6th Cir. 2012), the reasonableness of a stop based on suspicion of a *completed* misdemeanor "turns on the nature of the crime, how long ago the suspect committed it, and the ongoing risk of the individual to the public safety," *United States v. Jones*, 953 F.3d 433, 437 (6th Cir. 2020).

The reasonable-suspicion analysis is "based upon an 'objective standard that does not depend on the subjective beliefs of the officers on the scene,' but rather on the actual facts known to the officers." *United States v. Chambers*, 638 F. App'x 437, 440 (6th Cir. 2015) (quoting *United States v. Winters*, 782 F.3d 289, 303 (6th Cir. 2015)). "Pertinent factors in the reasonable-suspicion

analysis 'include the officer's own direct observations, dispatch information, directions from other officers, and the nature of the area and time of day during which the suspicious activity occurred.'" *Id.* (quoting *United States v. Campbell*, 549 F.3d 364, 371 (6th Cir. 2008)). Ultimately, "[w]hether an officer has reasonable suspicion of criminal activity is judged by the totality of the circumstances." *Id.*

Finally, a seizure supported by reasonable suspicion must not only be "justified at its inception," but it must also be "reasonably related in scope to the circumstances that justified the interference in the first place." *United States v. Saucedo*, 226 F.3d 782, 789 (6th Cir. 2000) (quoting *Terry*, 392 U.S. at 20); *see also, e.g.*, *United States v. Simmons*, 174 F. App'x 913, 916 (6th Cir. 2006) ("Typically, this means that the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions." (quoting *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984))).

Here, the officers plainly had reasonable suspicion that Wilson was actively attempting to trespass (even if the Court were to agree with Wilson on the timing of the seizure and find that it occurred when Hill told Wilson, "You gotta go"). When the officers first arrived, they observed Wilson yelling and screaming outside the bar, and the owner of the bar then told the officers that Wilson had trespassed before and that Wilson knew he was not allowed to be there. [R. 17, Ex. C at 1:16–2:20]; [R. 17, Ex. D at 1:18–2:20]. The officers were also aware of the owner's report that Wilson had previously assaulted him. [R. 26, p. 6:1–3].[4] Finally, when Wilson saw the officers walking toward the front door to exit the bar, he began to walk away. [R. 17, Ex. C at 2:12–2:18].

[4] Hill testified that the owner told the officers about the assault as they were walking from the back of the bar towards the front door. [R. 26, pp. 5:18–6:3]. Having reviewed the relevant portions of the officers' BWC recordings, [R. 17, Ex. C at 1:46–2:20]; [R. 17, Ex. D at 1:50–2:20], the Court is unable to discern whether the owner made such a report at that time. However, the Court credits Hill's testimony that he was made aware of the prior assault—by either the owner or the 911 dispatcher—before he told Wilson, "You gotta go."

That information was more than sufficient to provide the officers with a "particularized and objective basis" for suspecting that Wilson had just been engaging or attempting to engage in criminal activity. *See Sheckles*, 996 F.3d at 343; *see also, e.g.*, *Young*, 707 F.3d at 604 (finding that there was reasonable suspicion of trespassing based primarily on an officer's observation that the defendant was in a "reclined position in the passenger seat of a parked car outside of an open restaurant at 1:15 am" and remained there for "a minute and a half" with no apparent business at the restaurant); *Kennedy v. Fields*, No. 23-CV-11949, 2024 WL 3331242, at *9 (E.D. Mich. May 14, 2024) (noting that officers had reasonable suspicion of trespassing when the staff of a homeless shelter "called the police to remove [the person] after he was no longer welcome at the shelter"), *report and recommendation adopted*, No. 23-CV-11949, 2024 WL 3220720 (E.D. Mich. June 26, 2024); *United States v. Keith*, 559 F.3d 499, 504 (6th Cir. 2009) ("[E]vasive behavior on the part of a suspect is a factor that may support a finding of reasonable suspicion." (citing *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000))).

Moreover, the scope of any seizure was reasonable in light of the circumstances. *See Saucedo*, 226 F.3d at 789. Hill initially directed Wilson to continue moving away from the scene of his trespassing, but seconds later, the officers directed Wilson to stop so that they could obtain his identification. [R. 17, Ex. D at 2:21–2:30]. The Supreme Court has made clear that "questions concerning a suspect's identity are a routine and accepted part of many *Terry* stops." *Hiibel v. Sixth Jud. Dist. Ct.*, 542 U.S. 177, 186 (2004); *see also, e.g.*, *Hayes v. Florida*, 470 U.S. 811, 816 (1985) ("[I]f there are articulable facts supporting a reasonable suspicion that a person has committed a criminal offense, that person may be stopped in order to identify him, to question him briefly, or to detain him briefly while attempting to obtain additional information."). And identification is particularly relevant in the context of trespassing, because the lawfulness of a

person's presence at a property often turns on that person's identity. *See, e.g.*, *Harden v. Hillman*, 993 F.3d 465, 475 (6th Cir. 2021) (explaining that under Kentucky law, "[a] person who 'defies a lawful order not to enter or remain personally communicated to him by the owner of such premises or other authorized person' lacks a privilege or license to remain on the premises" (quoting Ky. Rev. Stat. § 511.090(2))). Finally, once Wilson disobeyed the officers' orders to stop moving and began to flee, the officers were plainly justified in chasing and seizing him for further investigation. *See, e.g.*, *Williams*, 475 F. App'x at 39. Thus, any seizure that occurred prior to Wilson's discarding his gun and then being caught and handcuffed—which, again, was less than one minute after Hill told Wilson, "You gotta go," *see Young*, 707 F.3d at 601, 606 (concluding that a *Terry* stop was reasonable when officers stopped a suspected trespasser and used his identification to run a warrant check because, among other reasons, the "entire incident lasted less than four minutes")—was reasonable in both its initiation and its scope.

In sum, even if the Court were to accept Wilson's faulty premise that a seizure occurred prior to his discarding the gun, the Court would still conclude that the officers' conduct was reasonable under *Terry* and its progeny. Wilson's objections to the contrary are not persuasive.

Wilson's second objection asserts that Judge Stinnett erred in concluding that the officers' "stopping" Wilson was justified because the officers' subjective intent was aimed at "future notice and future enforcement, not confirming or dispelling whether Wilson was presently remaining unlawfully after he had complied and was leaving." [R. 27, p. 6]. The Court disagrees with Wilson's suggestion that the officers' *only* purpose in stopping Wilson was related to future enforcement. On the stand, Officer Hill explained that they needed Wilson's information to complete their investigation into the current trespass, as well as to help them address any future allegations. [R. 26, pp. 23:13–24:6, 33:12–34:1]. Regardless, "the actual subjective motivation of

the officer(s) involved" is not relevant to a court's analysis of the reasonableness of a stop, *Saucedo*, 226 F.3d at 789, and as explained above, identification is a common and reasonable component of a *Terry* stop, *see, e.g.*, *Hiibel*, 542 U.S. at 186. Thus, this objection is without merit.

Wilson's third objection is that Judge Stinnett erred by relying on Wilson's flight and discarding the gun to "retroactively justify" the officers' initial seizure. [R. 27, pp. 8–9]. However, Judge Stinnett made clear that any initial stop was justified by the officers' reasonable suspicion of Wilson's trespassing and that Wilson's subsequent conduct merely provided the officers with "additional suspicion warranting a prolonged seizure and search." [R. 24, p. 7]. For the reasons explained above, Judge Stinnett's analysis was amply supported by the record, and he did not impermissibly rely on Wilson's conduct after the officers' "initial seizure." *See, e.g.*, *Sheckles*, 996 F.3d at 343; *Williams*, 475 F. App'x at 39.

Wilson next objects to Judge Stinnett's citation to *Young*, 707 F.3d at 605, "for the general proposition that suspicion of trespassing can support a *Terry* stop." [R. 27, p. 9 (citing [R. 24, pp. 5–6])]. In Wilson's view, any offense was "completed" as soon as Wilson began to walk away from the bar and, thus, the officers' "seizure" should have been analyzed as one based on a "previously completed nonfelony offense." *Id.* at 10–11. However, even if the Court were to assume that Wilson's attempted trespassing was "completed" as soon as he stepped away from the bar, the officers' "seizure" was plainly reasonable under the factors identified by the Sixth Circuit in *Jones*: "the nature of the crime, how long ago the suspect committed it, and the ongoing risk of the individual to the public safety." *See Jones*, 953 F.3d at 437. As other courts have noted, "a criminal trespass inherently involves some risk of confrontation with the property owner." *United States v. Moran*, 503 F.3d 1135, 1142 (10th Cir. 2007). That risk was no doubt present in this case, given that the owner of the bar, who reported that Wilson had assaulted him the previous weekend,

was visibly agitated by Wilson's continued presence, [R. 17, Ex. A at 0:10–0:22]; [R. 17, Ex. C at 1:47–2:20]; [R. 17, Ex. D at 1:51–2:22], and that Wilson had been causing a disturbance directly outside the bar when the officers arrived. [R. 17, Ex. C at 1:16–1:30]; [R. 17, Ex. D at 1:18–1:35]. Thus, both the nature of the crime and Wilson's ongoing risk to public safety supported the officers' decision to direct Wilson away from the bar. Moreover, even if Wilson's trespass was formally "completed" by the time he started to walk away from the bar, the officers' directive was more or less contemporaneous with that completion. *See, e.g.*, *United States v. Sparks*, No. 24-CR-85, 2025 WL 1099361, at *6 (S.D. Ohio Apr. 9, 2025) (finding that a stop for jaywalking was reasonable because the stop occurred "just minutes after the jaywalking" and that the "temporal proximity . . . alone suggest[ed] that the stop was reasonable"). Accordingly, even if Wilson's criminal activity had been completed by the time the officers ordered him to continue walking away, the officers' decision to issue such an order was undoubtedly reasonable, and any error in Judge Stinnett's citation to *Young* was harmless.

Wilson's fifth objection is that Judge Stinnett erred by recounting Hill's testimony that the area outside of the bar was part of the bar's "premises" under state and local law because it is unclear from the record whether the bar owned or controlled the relevant portions of the sidewalk and parking lot. [R. 27, pp. 11–13]. Contrary to Wilson's suggestion, however, Judge Stinnett did not rely in any way on Hill's testimony as to the bar's "premises" to conclude that the officers had reasonable suspicion of Wilson's trespassing. Indeed, Judge Stinnett conducted his analysis on the express assumption that "Wilson's location when the police arrived was not part of the premises," and he noted Wilson's presence outside the bar as merely one of several factors supporting the officer's reasonable suspicion: "Hill and Midkiff were given ample evidence that Wilson was previously trespassing or threatening to trespass prior to their arrival based upon information from

the owner and Wilson's still presence just outside the premises." [R. 24, p. 5]. Accordingly, Wilson's objection is without merit.

Finally, Wilson objects to Judge Stinnett's references to Wilson's "being loud and disturbing the peace" and engaging in "disruptive behavior," because Judge Stinnett did not cite any particular disorderly conduct statute. [R. 27, p. 14 (quoting [R. 24, pp. 2, 5])]. Contrary to Wilson's assertion, however, Judge Stinnett did not "use the labels 'disruptive' and 'disturbing the peace'" as "independent bas[es]" justifying the search. *Id.* Instead, Judge Stinnett simply noted that Wilson's unruly conduct provided corroboration to the owner's report of trespassing and, along with the other circumstances observed by the officers, supported their reasonable suspicion of trespassing.[5] [R. 24, p. 5]. Thus, this objection, too, is wholly unpersuasive.

In sum, the Court agrees with Wilson that a seizure did not occur when the officers directed Wilson to stop, and Wilson continued to walk, and then began to run, through the parking lot and onto the sidewalk. However, the Court is not persuaded by Wilson's argument that a seizure occurred earlier, when Hill directed Wilson that he had to "go," and Wilson continued to leave. Accordingly, the Court finds that a seizure did not occur until Midkiff caught and handcuffed Wilson and, thus, that the officers' recovery of Wilson's discarded gun was not the fruit of any seizure, let alone an unlawful one. Moreover, even if the Court were to accept Wilson's claim that a seizure occurred sometime before he discarded the gun (and even as early as the first verbal exchange, when Wilson was told, "You gotta go"), the Court would still conclude that the officers' conduct was reasonable, that Wilson's remaining objections are unpersuasive, and that there is no

---

[5] In any event, the officers likely had reasonable suspicion to stop Wilson based on state and local prohibitions on disorderly conduct and noise disturbances. *See* [R. 26, pp. 5:1–4, 7:15–22, 9:19–10:3]; [R. 17, Ex. C at 1:16–1:30]; [R. 17, Ex. D at 1:18–1:35]; Ky. Rev. Stat. § 525.060; Lexington–Fayette Urban County Code of Ordinances § 14-71; *see also, e.g.*, *United States v. Warner*, No. 10-20746, 2011 WL 2976786, at *3 (E.D. Mich. July 22, 2011) (finding that officers had reasonable suspicion to conduct a *Terry* stop based on a municipal ordinance that prohibited disturbing the peace). The Court need not resolve that issue, however, because the officers were plainly justified in stopping Wilson based on their reasonable suspicion of trespassing.

basis for rejecting the ultimate conclusion recommended by Judge Stinnett. For those reasons, the Court will overrule all but one part of one of Wilson's objections, modify the R&R accordingly, and deny Wilson's Motion to Suppress.

## IV. CONCLUSION

For the reasons explained above, and the Court being otherwise sufficiently advised, **IT IS HEREBY ORDERED** as follows:

1. Magistrate Judge Stinnett's Report and Recommendation, **[R. 24]**, is, **except as modified above**, **ADOPTED** as the opinion of the Court.
2. Wilson's objections, **[R. 27]**, are, **except as noted above**, **OVERRULED**.
3. Wilson's Motion to Suppress, **[R. 14]**, is **DENIED**.

This the 3rd day of November, 2026.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY